IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TONY HARDEN, K-04116

Petitioner,

vs.                                          Case No. 16-cv-868-DRH

JOHN BALDWIN,

Respondent.

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Tony Harden, a state prisoner, has filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Harden challenges his continued confinement as a sexually dangerous person ("SDP") at Big Muddy River Correctional Center, and seeks immediate release. On February 26, 2014, the state trial court ordered his conditional release. However, respondent (the Director of the Illinois Department of Corrections) has failed to facilitate Harden's discharge from custody.

In April 1998, in Sangamon County Case Number 97-CF-1104, Harden stipulated to being a SDP, in lieu of facing criminal prosecution (Doc. 1, pp. 1-2). The trial judge ordered him to be confined pursuant to the Sexually Dangerous Persons Act ("SDPA"), 725 ILLINOIS COMPILED STATUTES 205/0.01 *et seq*. During his confinement, Harden was to receive treatment until such time as he was determined to no longer be dangerous.

The petition is now before the Court for review pursuant to Rule 4 of the

Rules Governing § 2254 Cases in United States District Courts. Rule 4 provides that upon preliminary consideration by the district court judge, "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." After carefully reviewing the petition, the Court concludes that this action is subject to dismissal.

## The Petition

The instant petition raises the following grounds for relief: (1) Harden has continued to be confined under the SDPA despite the state court's February 26, 2014, order of conditional release (Doc. 5-1, pp. 1-6); (2) The SDP Program is unconstitutional as applied to Harden, and violates the Americans with Disabilities Act ("ADA") because of its systemic failures; (3) Harden's indefinite confinement since the state court ordered his release violates his rights under the Eighth and Fourteenth Amendments; (4) Harden's ongoing confinement and treatment as if he were a convicted prisoner amounts to cruel and unusual punishment in violation of the Eighth Amendment (Doc. 1, pp. 3-4). Harden names John Baldwin, the Director of the Illinois Department of Corrections ("IDOC"), as the respondent, because Baldwin is his court-appointed guardian under the SDPA. Harden notes that he has filed a petition in state court for judicial review of his case, as well as a mandamus action (Doc. 1, p. 4; Doc. 5-1, pp. 11-17; Doc. 5-4, pp. 4-10). However, the petition does not include further information on the status of those matters.

Subsequent to filing the habeas action, Harden filed three motions with this Court seeking to add exhibits to his pleading: a "Motion Submitting Evidence" containing 91 pages of exhibits (Doc. 5), a second motion to submit evidence, including a motion for immediate release (Doc. 8), and a third motion submitting evidence (Doc. 13), which included a 12-page report prepared for a civil rights case now pending before this Court under Case No. 14-cv-844-SMY-RJD,[1] in which Harden was one of the original plaintiffs. He also filed a motion for declaratory and injunctive relief (Doc. 12), and another motion for immediate release from confinement (Doc. 9).

### Motions Submitting Additional Evidence (Docs. 5, 8, & 13)

In the motion at Doc. 5, Harden expands on his argument that the SDP Program is inadequate to effect his recovery and is out of compliance with the SDPA, because there are no transitional facilities or assistance to facilitate homeless and indigent SDP's to re-enter society once they have been conditionally released or discharged (Doc. 1, p. 3; Doc. 5, p. 2). As a result, he must remain confined indefinitely. This system violates his constitutional rights. His court order for conditional release came after two experts found him to no longer be dangerous (Doc. 5, p. 4). He claims that the IDOC has made no efforts to obtain transitional housing that would comply with Harden's conditions of release, and his family does not have the means or the responsibility to find such housing (although they are attempting to assist him) (Doc. 5, p. 9).

---

[1] This case is *Howe, et al., v. Holt, et al.*, Case No. 14-cv-844-SMY (S.D. Ill. filed July 25, 2014).

Among the exhibits submitted along with the motion at Doc. 5 are a *pro se* "Motion Requesting Court to Modify Conditions of Release," filed in the Sangamon County Circuit Court, Case No. 97-CF-1104, on June 18, 2015 (Doc. 5-2, pp. 1-4). The motion requests a ruling on the constitutionality of Harden's continued confinement, a review of the conditions of his release, and seeks his release from custody. On July 9, 2015, Harden, this time by counsel, filed another Motion to Modify Conditions of Release (Doc. 5-2, pp. 5-7), requesting the court to order the IDOC to show what efforts had been made to find an approved residence for him. According to a letter from Harden's counsel, the court then ordered the IDOC to provide updates every 15 days regarding its efforts to find suitable housing for him (Doc. 5-2, p. 12). He includes several letters/reports submitted between January and April 2016, documenting that the IDOC was waiting to see if his brother would purchase a home where Harden could reside (Doc. 5-2, pp. 13-17; Doc. 5-3, pp. 1-8).

Another exhibit consists of the aforementioned "Petition of Mandamus" which was submitted to the Jefferson County Circuit Court on or about June 23, 2016 (Doc. 5-4, pp. 4-10). In it, Harden seeks an order requiring IDOC Director Baldwin to provide him with transitional housing so that he could be released.

The motion to submit evidence at Doc. 8 reiterates Harden's claim that the SDP program cannot effect his recovery, and presents three documents:[2] a letter from the John Howard Association offering the opinion that "the SDP program is

---

[2] These three pages were not filed of record, pending review by the Court. The Clerk shall be directed to file the documents as exhibits to the motion at Doc. 8.

effectively a life sentence with the possibility of parole, and its residents are effectively prisoners that were imprisoned absent a criminal trial." Also included is a letter from Harden's counsel and a forwarded letter from the IDOC advising that as of September 13, 2016, there was still no change in the status of its efforts to find acceptable housing for Harden.

The motion at Doc. 13 again asserts that Harden's Eighth and Fourteenth Amendment rights are being violated by his continued confinement, where the SDP program does not comply with the SDP Act, and fails to provide for him to be discharged in compliance with the conditions of his release. He presents the Court with a report prepared by Dean Cauley, who was retained to evaluate the effectiveness of the SDP program at Big Muddy River, in connection with the civil rights action in this Court brought by Harden and several other SDP detainees. *Howe, et al., v. Holt, et al.*, Case No. 14-cv-844-SMY (S.D. Ill. filed July 25, 2014) (Harden was allowed to voluntarily dismiss his claims in that case without prejudice on July 1, 2015, in anticipation of his release; *see* Doc. 73 in *Howe*). Mr. Cauley opines that the SDP treatment program at Big Muddy:

> [C]annot fulfill a goal to "treat and release after the briefest time possible". Instead, the inherent flaws in the program result in treatment that is slow, repetitive, and not catered to the mission of treating the men and returning them to the community as quickly as possible. Also, the program has not focused on creating a therapeutic milieu, but instead is restrictive, limited, and adversarial.

(Doc. 13-1, p. 3 (Doc. 124-1, p. 15 in Case No. 14-cv-844-SMY-PMF)).

### Motions for Release from Custody (Docs. 12, 8 & 9)

The motion at Doc. 12, submitted on September 12, 2016, reiterates the

point that Harden was ordered to be conditionally released, but has remained in custody for the ensuing two years and eight months since that order. Respondent/guardian Baldwin has failed to develop an exit strategy, resources, or transitional assistance in order for Harden to be released in accordance with the conditions imposed (Doc. 12, pp. 2-3). He then takes issue with the conditions of release specified by his trial court, claiming that they are punitive rather than rehabilitative, do not comport with legitimate government objectives, and thus violate the Fourteenth Amendment's due process clause (Doc. 12, pp. 4-5). Incorporating many of the points made by Mr. Cauley in the report included with Doc. 13, Harden further attacks the SDP program for its failure to provide adequate treatment that includes treatment plans for committed persons after their release into the community (Doc. 12, pp. 10-11). He concludes that because of these failures of the SDP program, he is "essentially serving life in prison" (Doc. 12, p. 12). He requests this Court to grant him immediate release.

On October 5, 2016, Harden filed another motion seeking immediate release, raising the same arguments as his earlier motion (Doc. 9). He includes a list of court decisions which he claims support his arguments that the SDP program is deficient and unconstitutional due to its failure to provide him with treatment leading to his recovery and release (Doc. 9, p. 3).

## Discussion

The SDPA allows for the indefinite civil commitment of a person who has not yet been convicted of a sexual offense (*i.e.*, a pretrial detainee), upon

establishing that the person has a mental disorder that renders him or her a sexually dangerous person under 725 ILL. COMP. STAT. 205/1.01. *See Allison v. Snyder*, 332 F.3d 1076, 1078-79 (7th Cir. 2003). Thus, Harden is not an ordinary inmate serving a determinate sentence as punishment for a specific offense, with the prospect of release once he has served his time. As an SDP committed to the custody of the IDOC, the duration of his commitment is to be determined by the court where the SDP proceeding took place. *See* 725 ILL. COMP. STAT. 205/0.01 *et seq*.

For any person confined pursuant to the SDP Act, the IDOC director "shall provide care and treatment for the person committed . . . designed to effect recovery," and the committed person is to be housed "in any facility in the Department of Corrections or portion thereof set aside for the care and treatment of sexually dangerous persons." 725 ILL. COMP. STAT. 205/8. Thus, Illinois state law governs both the housing and the treatment of persons adjudicated as sexually dangerous.

The SDPA provides a vehicle for a committed person to seek release on the basis that he or she has recovered and is no longer a sexually dangerous person. *See* 725 ILL. COMP. STAT. 205/9. If the committing court finds that the SDP:

> appears no longer to be dangerous but that it is impossible to determine with certainty under conditions of institutional care that the person has fully recovered, the court shall enter an order permitting the person to go at large subject to the conditions and supervision by the Director as in the opinion of the court will adequately protect the public.

725 ILL. COMP. STAT. 205/9(e). The statute thus contemplates that the committing

court shall exercise its discretion as to the appropriate conditions to impose upon a person to be released from confinement as an SDP, with the objective of protecting the public. Furthermore, the Director of the IDOC is charged with the responsibility of supervising the released person.

In Harden's case, he sought and obtained a court order for his conditional release, which was granted on February 26, 2014. He has submitted additional exhibits to his petition, which include a copy of the order for conditional release and the applicable conditions (Doc. 5-1, pp. 1-6). It appears that at this time, as evidenced by the reports from the IDOC that there has been no change in the status of their efforts to find a satisfactory placement for Harden, his continued custody is primarily due to the lack of an appropriate residence that complies with the conditions of his release.

It is apparent from Harden's exhibits, and from the public records of the Sangamon County Circuit Court, that his efforts in the state trial court to achieve his release from custody are still ongoing. As noted above, Harden filed a motion to modify the conditions of his release on July 9, 2015 (Doc. 5-2, pp. 5-7). This resulted in an order for the IDOC to report back to the court on its efforts to find an approved residence. Those reports were still being submitted as recently as September 13, 2016 (See exhibit submitted with Doc. 8). Additionally, the online docket for Harden's case in Sangamon County Circuit Court No. 97-CF-1104 demonstrates that he filed a petition for release on July 11, 2016. *See* Http://records.sangamoncountycircuitclerk.org/sccc/DisplayDocket.sc (last visited

Oct. 28, 2016); *see also Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (a court may judicially notice public records available on government websites) (collecting cases). On October 25, 2016, the state trial court held a telephone hearing, at which time another hearing was reset in the matter, to be held on December 12, 2016. *Id.*

The ongoing proceedings in the state circuit court present two obstacles, each of which prevent this federal Court from considering Harden's petition for habeas corpus relief at this time – the failure to exhaust available remedies, and the *Younger* abstention doctrine.

First, all state court remedies must be exhausted before a petitioner may seek intervention from the federal court under 28 U.S.C. § 2254.

> We cannot review a habeas petitioner's constitutional issue unless he has provided the state courts with an opportunity to resolve it "by invoking one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999); see 28 U.S.C. § 2254(b)(1)(A). A petitioner must fairly present his federal claims to the state courts by arguing both the law and the facts underlying them. *Baldwin v. Reese*, 541 U.S. 27, 29, 32, 124 S. Ct. 1347, 158 L.Ed.2d 64 (2004) (explaining that, to comply with the requirement that the claims assert violations of the federal constitution, the petitioner may simply label his claim "federal" or cite cases that decide the claim on federal grounds); *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007); *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006).

*Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010).

Under the AEDPA, an application for habeas corpus shall not be granted unless the applicant has exhausted the remedies available in the state courts, such that he lacks "the right under the law of the State to raise, by any available

procedure, the question presented." 28 U.S.C. § 2254(b)(1)(A), (c). The principle of exhaustion is based on comity and the fact that state courts, like federal courts, are obliged to enforce federal law. *O'Sullivan,* 526 U.S. at 844; *see also Spreitzer v. Schomig,* 219 F.3d 639, 645 (7th Cir. 2000).

While Harden continues to press his claims in the state trial court, this matter remains unexhausted. Neither the state appellate court nor the Illinois Supreme Court could yet have had the opportunity to review the trial court's handling of the order for Harden's conditional release, let alone his ongoing efforts to modify the conditions. Until Harden's claims have gone through a complete round of appellate review, exhaustion has not been accomplished, and a habeas action in this Court is premature. Additionally, Harden's mandamus action, which may still be pending, may provide a procedure for him to obtain the relief he seeks. Since that action was only filed in June 2016, Harden could not yet have completed appellate review on that matter, if his petition was denied.

Secondly, under the abstention doctrine outlined in *Younger v. Harris*, 401 U.S. 37 (1971), a federal court should not interfere with pending state judicial proceedings unless "special circumstances" exist. *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484 (1973); *Sweeney v. Bartow*, 612 F.3d 571 (7th Cir. 2010); *Brunken v. Lance*, 807 F.2d 1325, 1330 (7th Cir. 1986) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982)); *Neville v. Cavanaugh*, 611 F.2d 673, 675 (7th Cir. 1979). Such special circumstances are generally limited to issues of double jeopardy and speedy trial.

*Braden*, 410 U.S. at 489-92; *Sweeney*, 612 F.3d at 573.

Even in the situation where a person who is the subject of a pending state proceeding has exhausted his state remedies by appealing to the highest state court, the Seventh Circuit has explained that the *Younger* doctrine would permit federal habeas relief only where "immediate federal intervention is necessary to prevent the challenge [to the legality of his custody] from becoming moot." *Sweeney*, 612 F.3d at 573 (prisoner facing commitment as a "sexually violent person" moved to dismiss state case, exhausted state interlocutory appeal, then applied for federal habeas relief while state commitment proceeding was still pending; court denied federal habeas petition based on *Younger* doctrine). Either a speedy trial challenge or a double jeopardy challenge would meet this test, because postponing the consideration of a federal habeas claim until the end of the state proceeding would mean that any relief would come too late to prevent the violation of the prisoner's rights. *Id.*; *see also Neville*, 611 F.2d at 676 (contrasting a double jeopardy claimaint, who has already "endured the rigors of a criminal trial," with a petitioner who has not yet been tried on any pending indictment).

The *Younger* doctrine directs that this Court should abstain from interjecting itself into the state's adjudication of Harden's conditional release, as well as the questions of whether the conditions have been satisfied to permit his release, or whether those conditions should be modified.

Under *Younger*, federal courts are required to abstain from interference in

ongoing state proceedings when they are "(1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as no extraordinary circumstances exist which would make abstention inappropriate." *Green v. Benden*, 281 F.3d 661, 666 (7th Cir. 2002) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 436-37 (1982) and *Majors v. Engelbrecht*, 149 F.3d 709, 711 (7th Cir. 1998)). The *Younger* abstention doctrine is implicated here because the ongoing proceeding is judicial in nature and involves the important state interest of adjudicating whether Harden should continue to be held in custody under the SDP Act, as well as the state interest of protecting the public by setting and monitoring the conditions of his release. Further, there is no indication that the state proceedings would not provide Harden with an adequate opportunity for review of any constitutional claims. And finally, no extraordinary circumstances are apparent which require federal intervention at this stage.

For these reasons, Harden cannot maintain an action for federal habeas corpus relief at this time. The petition shall be dismissed without prejudice.

## Disposition

The motions to submit evidence (Docs. 5, 8, & 13) are **GRANTED IN PART** insofar as the documents submitted as evidence have been considered by the Court in rendering this decision and those documents are part of the record in this case. The Clerk is **DIRECTED** to file the three pages of documents submitted along with the motion to submit evidence at Doc. 8, as exhibits to that motion. All

other relief requested in those motions is **DENIED**.

All other pending motions are **DENIED AS MOOT**.

**IT IS HEREBY ORDERED** that the petition is summarily **DISMISSED** without prejudice. Petitioner has not yet exhausted his state court remedies, and the ongoing adjudication in state court regarding the conditions of his release leads the Court to conclude that it should abstain from intervening in this pending matter.

If petitioner wishes to appeal this dismissal, he may file a notice of appeal with this court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues petitioner plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If petitioner does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prisoner trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

## Certificate of Appealability

Should petitioner desire to appeal this Court's ruling dismissing his petition for a writ of habeas corpus, he must first secure a certificate of appealability, either from this Court or from the court of appeals. *See* FED. R. APP. P. 22(b); 28 U.S.C. § 2253(c)(1). Pursuant to 28 U.S.C. § 2253, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."

This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner need not show that his appeal will succeed, *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003), but he must show "something more than the absence of frivolity" or the existence of mere "good faith" on his part. *Id.* at 338 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). If the district court denies the request, a petitioner may request that a circuit judge issue the certificate. FED. R. APP. P. 22(b)(1)-(3).

For the reasons detailed above, the Court has determined that the petition was brought prematurely, and therefore petitioner is not entitled to relief pursuant to 28 U.S.C. § 2254. Furthermore, the Court finds no basis for a determination that its decision is debatable or incorrect. Thus, petitioner has not made "a substantial showing of the denial of a constitutional right."

**IT IS THEREFORE ORDERED** that a certificate of appealability shall **NOT**

be issued.

The Clerk is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**Dated: November 7, 2016**

Digitally signed by Judge David R. Herndon
Date: 2016.11.07 16:43:20 -06'00'

**United States District Judge**